Good afternoon, your honors. May I proceed? Yes, please proceed. All right, good afternoon, your honors. May it please the court, my name is Colin McHugh, and I represent the petitioner in this case, Mr. Robert Thomas. I'd like to reserve five minutes for rebuttal, if I could. This case is about the commission's failure to give any deference to the ALJ's fact findings. The only question here is whether or not the ALJ's findings were supported by substantial evidence. Even if the commission might have reached a different decision, it was bound under the law to uphold the ALJ's determination. The ALJ in this case spent approximately 16 hours, considered live testimony from all of the witnesses, assessed credibility, and determined that respondent retaliated against Mr. Thomas. The commission, relying on a cold record, completely ignored the ALJ's determinations of credibility, facts, and inferences, acted as if it presided over the trial, cherry-picked facts to support its own determinations, and this was reversible error. This court should follow the standard review in Chaconne, or Donovan on behalf of Chaconne, and other Ninth Circuit cases with similar schemes of review. The DC Circuit Court is very persuasive, and similar schemes of review have been used by the Ninth Circuit under the Longshoreman Statute, and especially in Bumblebee Seafoods, as we've cited in our materials. The commission in Bumblebee was bound to accept the ALJ's fact findings unless contrary to the law, irrational, or unsupported by substantial evidence. Other cases in the Ninth Circuit, under the NLRA, the ALJ's determinations under this standard should be given special weight, cannot be easily ignored, afforded great deference, and because the ALJ sees the They don't review a cold record, like is stated in Pensacito's, Doug Hartley, Tischler, Brooks Camera, and others. In Universal Camera, it's stated that the agency's evidence must be stronger if it rejects the examiner's findings. Here, your honors, the commission's order is virtually devoid of evidentiary backup, let alone stronger evidence, especially leaving monumental gaps in not reviewing the ALJ's order for substantial evidence. The commission, in this case, should have looked at four factors under Chacon. Those factors are disparate treatment, hostility or animus, knowledge, and timing. Relying on the substantial evidence, the ALJ correctly found under all four Chacon factors of causal connection as causes of Cal Portland's wrongful termination of Mr. Thomas. The Ninth Circuit recognizes disparate treatment when an employee is singled out and treated less than others. The ALJ, in this case, based on the substantial evidence, correctly found that Thomas was treated differently than others for being terminated for a single isolated incident and had almost two decades of service for the same company. This is supported by the substantial evidence in two respects. Thomas was treated differently than Dean Demers, his supervisor, who engaged in same or similar unsafe behavior, yet recommended termination for the same behavior. And that is supported by a case, Nicholson v. Hyannis, which I believe we cited to in our materials. As such, based on the substantial evidence, Demers exhibited and was not terminated for similar behaviors for which Thomas was terminated, demonstrating an inconsistent application of safety policies. This is disparate treatment, and it was completely ignored by the commission. The second piece of evidence of disparate treatment was that Thomas was treated differently than others terminated for the attendance policy. None of the other employees mentioned at trial had received a termination letter effective immediately or at the time of their voluntary resignation that were suspended or terminated like Thomas. The ALJ agreed that Cal Portland's use of the attendance policy was pretext. The commission, despite the ALJ's ruling, ignored disparate treatment prong, ignored at least two examples of disparate treatment in the record, and incorrectly held that he was treated exactly the same. This was inappropriate and an irreversible error. The second Chacon factor is animus or hostility. And there were a lot of monumental gaps in the hostility or animus of Chacon factor for causation. One of them was the nature of the interrogation. ALJ found animus based on the interrogation itself in note four of its ruling. The commission completely ignored that inference. So it was a short and incomplete order with this huge gap of causation not even addressed by the commission after the ALJ had found that. And it was supported by substantial evidence. The next factor that was woefully ignored by the commission was the ignoring of safety complaints by Mr. Thomas to the employer. Can I ask a legal question? My understanding is that the statute requires a because of standard of discrimination, which I think courts have interpreted as meaning, you know, but-for causation. But the Mine Safety Commission, I believe, didn't apply that standard. Would you agree with that? Your Honor, yes, I'd actually like to address that really quickly. We did concede in our brief that it was a but-for causation, and that was a mistake. This is not the but-for causation that we discussed in our brief. Although Bostock kind of showed that there could be more than one causal or causation to show discrimination or retaliation, it would be a motivating factor standard in this case. So do you think you survive the but-for causation? Because I believe the commission filed a use of even lower standard in any part. So if the commission thought you didn't make the lower standard, how are you going to make the higher standard? Well, in regards to the commission and looking at the lower standard, if you look at the most recent case, the reason why we addressed Bostock and the but-for causation was to show that there can be more than one proposed cause. And that doesn't mean that there cannot be discrimination based on more than one cause. So should we remand to the commission then to determine the question under the proper standard and under the Bostock multiple but-for? No, your honor. Again, this should be a motivating factor standard. And the reason why a remand would not be appropriate would be the types of cases that we're looking at. And the perfect case to look at is the Chaconne case in the DC Circuit. Wait, so I'm sorry. Why are you saying that it should be the motivating factor standard when the statute says because? It's my understanding, your honor, that that's the standard that has traditionally been used. And that's not something that has been appealed per se in this court. But specifically, it's my understanding that that's how this court has treated the causation standard. I see. So getting back to the Chaconne factors, the second factor that I had discussed as well was the animus or hostility argument or the factor. The ALJ found that not addressing a safety issue in the context of the whole record was additional proof that the employer was not welcome to hearing such concerns, but was more likely than not hostile to them. The commission entirely disagreed, holding instead that establishing discriminatory motivation as part of complainant's prima facie case requires more than a lack of responsiveness to a minor's action. And that hasn't been held in the Ninth Circuit as something that is a requirement. The commission claims that it focused on Thomas's testimony, stating that his concerns had been addressed, but it really just replaced one concern for another from the egregious hours to the Rock Barge crew not being appropriately trained. So I think if I may, I'd like to Thank you, your honor. I apologize. No, no problem. Thank you. May it please the court, on behalf of Cal Portland, at the outset to address Judge Bumate's question about Justice Gorsuch's tremendous decision in the Boston case. It came out the morning I filed my answering brief. I did read it before I filed it. I don't think it's particularly pertinent to the present case because the opposing counsel and or Thomas misread Justice Gorsuch. He merely pointed out that the motivating factor is a lesser standard. I think he called it a more forgivable standard for employees. And then Justice Gorsuch proceeded to address but for in his case, in our case, Thomas failed for the commission under the less favorable or more favorable for Thomas, less favorable for the employer motivating factor standard. So regardless of the standard, Thomas has failed, according to the commission. Now I brought a... I think in an administrative context, though, we don't do that type of harmless error analysis. So why shouldn't we just remand it back to the commission to supply the proper legal standard? Well, I do think it would be an issue for remand, your honor, potentially. The commission's decision was that Thomas, under any conceivable theory, had failed to establish a prima facie case under the Mine Act. My view of that, and I certainly will not argue with the Ninth Circuit Court of Appeals judge, my view of that was that given that, it doesn't really matter which causation standard we apply because the commission applied a causation standard and he can't meet even a lesser one. And I'm not... I'm trying to be forthright with the court. I do think it's a but-for standard and I pled it in my... as an affirmative defense in my answer to Thomas's complaint. And I would more... I would love to see that happen, but in fairness to the commission, I don't think it's dispositive in this case because he can't even meet the lower standard. So, counsel, I'm going to jump in here. It seems to me that a key issue in this case is whether or not the commission actually applied substantial evidence review or whether it just applied its own view of the record. So I'd like you to address that point. Without question, your honor. I brought a mess to the commission in an interim decision that was unhinged from the administrative hearing record and unsupported by substantial evidence. The commission granted discretionary review. The commission, and I'm sure the court has gone through, every single finding of fact the commission made is supported by the record, adequate to the record, and I would even argue is generous to Mr. Thomas in what the record reflects. And when that happens, it's conclusive. And then secondly, the commission's decision is consistent with its own precedent. The commission cited the Metz v. Khmer's Lyme case, and then I cited a whole host of other cases underneath in case there was any question. Landerville, Roebel, Luttrell, Fletcher-Wise, Ruse, Pack, Hagine. Essentially, Mr. Thomas's case would have been frivolously, quote, frivolously brought, end quote, had he even asked for temporary reinstatement under commission precedent. Because there's a whole host of cases that say, look, if you've been employee, if you've engaged in an unsafe act, then the employer, the operator has a statutory obligation to investigate that. And the fact that they investigate that or issue any discipline is not a mine act discrimination case. Because engaging in unsafe acts are not mine act discrimination cases. And both Thomas himself under oath testified that he communicated no violations to the inspector. And his attorney had oral argument before the commission said he didn't believe there was any safety violations communicated to the inspector. And even if you consider his long hours or his barge task training allegations, which the commission generously said perhaps involved safety and then dispose of them, there's no hostility, there's no animus, there's no timing, there's nothing to connect those causally under either the motivating factor standard or but for to what occurred on January 25, when he was suspended pending investigation. And then to Mr. Thomas's refusal to respond to repeated requests that he contact the company and meet with them to explain the discrepancies between Inspector Johnson's Mr. Thompson description and Mr. Thomas's description of what occurred. And so to answer your question, your honor is I brought a mess to the commission, the commission, and I mean this, they elegantly went through the record painstakingly and said, this is what the record actually says. And if you read the record, it's not contradicted. Thomas admits that he didn't he disputes Inspector Johnson's account of whether he was on the ladder or not, but he admits Inspector Johnson told Cal Portland in front of him that he saw him on the ladder. He admits he refused to answer questions in the investigation meeting. He admits he said it was just a sham. He admits he canceled the follow-up. He admits he got Candy Strickland, the HR supervisor's said, do not accept return to center. He admits literally everything that the commission found. And those findings are conclusive. And we didn't just appeal the interim decision to the commission on substantial evidence. Under 30 USC 823, the commission has authority to review substantial evidence, to review whether legal conclusions are contrary to the law, to review precedent, to review substantial policy under MSHA, and to review procedural errors. And there was 67 errors presented to the commission, and they condensed them elegantly into the 14 or 15 page decision you saw. And the Hatfield issue was the only issue where the commission had an internal squabble. And I mean that lightly, but you had three to two, but it didn't matter because all five addressed all the allegations of protected activity regardless and said, there's just no conceivable theory where we have a Mine Act violation. And so I understand your question. Opposing counsel and Thomas now before you, let's just cut to the chase. They hinge their argument on a couple statements in the interim decision that say Dean Demers and Dave McCauley were overly rehearsed in their presentation. Whether a corporate, I don't know how anybody would meet that standard going forward if that were the standard. I rehearsed them, but I didn't overly rehearse them or I prepared them, but I didn't overly prepare them. The ALJ doesn't identify in the interim decision any specific testimony that was discredited. And that's because there wasn't any contradiction meaningfully in the testimony. The ALJ cites the use of coin terms, which was largely me, but not entirely me, that the coin term PFD misconduct was used. That was me. And I would typically say, you know, before the PFD misconduct or after the PFD, and then I would say, describe what happened. The ALJ said, well, they used the term suspended pending investigation. If you look at the commission decision, they were very, they pointed, they cited two specific places in the record where Thomas and McMillan also used the phrase suspended pending investigation, as did the ALJ herself in the interim decision. And then third, they said that I led witnesses and I'll stand by the record. I asked some big questions as signposted or foundational followed up by please describe, but those are yes or no questions. And all, what does all of this mean is that the witnesses themselves are not their credibility. First of all, it was me, but second of all, their credibility doesn't meet Thomas's affirmative obligation to prove a violation of the Mine Act. And the commission didn't need to address this offhanded comment about whether Demers and McCauley were rehearsed or not, which is the entire basis of the appeal before you, because the uncontradicted evidence of record supports that a Mine Act violation did not motivate the suspension and termination from employment. And that's what the commission elegantly after said. And that's really the crux of the issue before your honors. There is no question about what happened. Is Mr. Thomas engaged in the dangerous PFD misconduct? He was observed by the company had different reasons that it gave, which seem a little inexplicable given the, as you've said, undisputed events. So I guess, I guess I'm still struggling with, I mean, this isn't a discrimination retaliation case. There's almost never the smoke smoking gun of I really hate this guy because he talked to the inspector because he complained about safety issues. Like that almost never exists. Instead, you have to look at the situation and see if there are circumstantial evidence to show that there was some sort of motivation connected to those sorts of things. And I guess I'm still struggling with, I mean, it seems to me, this is a close call about whether the commission actually exercised substantial evidence review or just decided to decide this case based on how they wanted to decide it. Let me walk you through it. Your honor, January 24. He's observed by an MSHA inspector engaged in dangerous PFD misconduct over the waters of Columbia river. No question. I'm familiar with the facts. I'm familiar with the story and the chronology. So from a causation standpoint, nothing happened except Cal Portland extended him continued opportunities to participate in the investigation, including sending him letters. Had he, I mean the, the causal factor of a separation from employment is his refusal to continue to participate. He participate repeatedly until he'd been suspended and then received an email saying he'd been terminated. No, no. He refused to answer questions in the meeting with Woods and Demers. And he admits that. And then McCauley and Strickland want to have a follow-up meeting with him, your honor, and he cancels it. Because he received an email saying he'd been terminated. No, he received an unsigned, undated email that said wordsmith too. And if you look at Eisen's testimony, Eisen told Thomas, we got something. We, we saw something we weren't supposed to see number one, but number two, he never tells Cal Portland I'm not coming in because I thought I was terminated or I'm not coming in because I received, they don't even know he's received that because Demers recalled it. And Demers said, please disregard. It's been sent by mistake. All Thomas had to do. And he knew this is to respond to his employer. They can't make him come to work. And at some point administratively, and this was brief before the commission administratively, all employers have job abandonment policies because you can't continue somebody on your books when they're continuing to refuse to communicate and come to work. All he had to do was respond. And Dave McCauley said, I hadn't made up my decision yet. I needed to know whether he was, whether this was a repeatable circumstance. And I needed to know the answer to the latter question where Mr. Thomas differed from Mr. Demers. And if you look at the is undated, the subject line is wordsmith. Clearly that's not a communication to him. All he had to do was reach out. But, but I mean, nobody in the United States of America can make people come to work. And at some point administratively, when they cease responding to your overtures, you have to voluntarily separate them. That's what happened. And then he doesn't say, I want to come back to work. He says, I don't ever want to work there again because I don't want the headache of being a PIC on a barge. So that's the reality of it. And Thomas didn't present any evidence of hostility, animus, mine act retaliation, safety complaints, or anything. If you look at the Mets case, Thomas has none of that evidence. And Mets still said timing and knowledge alone are not enough. Thank you, your honor. I appreciate your questions. Thank you. Thank you, your honor. I wanted to address the first couple of points first in regards to testimony and whether or not there was a finding of credibility. And also I think that, you know, opposing counsel had talked a lot about whether or not the commission's own order was supported by substantial evidence. And again, the only question here is whether the ALJ's findings were supported by substantial evidence. And still there needs to be a more searching review and a more critical review, especially when the ALJ and the agency disagree. I can think of a few examples of where there were credibility, conflicts of testimony and where credibility does come into play. The first was there's evidence of knowledge of Thomas's protected activity related to hours in task training. My client and a neutral witness testified that they communicated those safety related concerns. The employer's witness denied having any conversations with Mr. Thomas about safety concerns about hours or task training. The ALJ resolved this clash of testimony in her initial order. And then the commission doesn't even address any kind of credibility issues, doesn't even look into credibility. It doesn't appear in the commission's order. Another example was that the employer's knowledge of Thomas's protected activity of engaging an attorney. Mr. Thomas and his daughter specifically told Mr. McCauley to contact his attorney. Mr. McCauley testified he did not recall Mr. Thomas mentioning his attorney. And then the ALJ credited Thomas and said he said that he was going to contact his attorney. That's knowledge of protected activity. The commission still relied on the fact that McCauley recalled the incident differently despite the ALJ's credibility determination. And so there's more than one example of there being credibility determinations concluding how the factual disputes are resolved in those clashes of testimony. I'd also like to mention that that the commission's record, the commission failed to even address some of the, I mean, really all we're looking at are the causal connection factors. The protected activity is not disputed at any point. They're all found to be valid. The adverse actions are all found to be valid by the ALJ and the commission. And all we're really looking at are the causation factors. So we looked at Chaconne for the four factors, timing, knowledge, disparate treatment, and animus or hostility. There are plenty of them that were not addressed by the commission. They just language that shows hostility or animus. The commission focused on one phrase that had been uttered when there was a litany of different examples of when the employer was saying hostile things towards Mr. Thomas, including he's effing done at Cal Portland. I'm going to get rid of him. And then I got rid of him for you, which by the way, doesn't make any sense and actually cuts against the justification, which is he just walked away. If he walked away, why would they be saying, I got rid of him for you? If that's not even the reason why he was terminated. And so the opposing counsel also talked about a couple different of the justification, justifications that were weak and implausible. Judge Hunziker, I believe you mentioned the fact that this was not a safety violation or the reason for his the safety incident. And that it's also cut against what cuts against that is the fact that his boss before, during, and after was engaging in the same behavior, same unsafe behavior. And why would he be terminated for a safety violation of his boss? The one who's terminating him is recommending his termination. In addition, one of the weak and implausible justifications is that he walked away from the investigation. The ALJ determined based on the evidence and the testimony that he didn't walk away. And in fact, he was writing multiple statements, three written statements that he met with his boss. He met with the Amtrak inspector multiple times on different days and that he didn't walk away. And finally, the fact that he had violated attendance policy is also weak and implausible. I have about 10 seconds. And the ALJ found that there was no evidence to support the affirmative defense because Mr. effective immediately. The employer failed to show any evidence that attempted to contact him to inform him he was no longer suspended or terminated. There was no text messages, emails, voicemails in the record. If you look for them, you won't find them. So I ask that you find for the petitioner in this case. Thank you, your honor. Thank you. Thank both counsel today. The case of Thomas versus Cal Portland company is submitted and we're adjourned for the afternoon. Thank you. Thank you.
judges: McKeown, Hunsaker, Bumatay